**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Austin Yarborough, | ) | Civil Action No. 3:07-1257-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Officer Pinckney B. Montgomery, | ) | |
| Sergeant Scott Smith, | ) | |
| Detective E.R. Corey, Deputy J.D. | ) | |
| Rabon and, Lt. Pat Boone, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Defendants' motions for summary judgment. Plaintiff has responded in opposition to the motions. For the reasons set forth below, Defendants' motions are **granted** and this matter is dismissed with prejudice.

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

**Facts**

Viewed in the light most favorable to Plaintiff, the facts are as follows. On September 20, 2005, Plaintiff was dropped off at the Kershaw County Hospital by his wife. The reasons prompting Plaintiff's visit to the hospital are unknown; however, Plaintiff noted on the sign-in sheet in the emergency room "suicidal." After some period of time, Plaintiff left the hospital without being seen by a doctor.[1]

Based upon Plaintiff's actions at the hospital, the City of Camden dispatcher issued a "Be On the Lookout" (or "BOLO") for an individual.[2] Kershaw County Deputy Sheriff Ty Cobb, responding to the BOLO in his official vehicle, spotted Plaintiff and attempted to initiate an investigatory encounter.[3] Plaintiff ran and Deputy Cobb pursued Plaintiff on foot. Deputy Cobb

---

[1] The actions taken by law enforcement which form the basis of this lawsuit were based upon victims' reports that Plaintiff had threatened to kill hospital staff and other patients before he departed the hospital. However, Plaintiff disputes this.

[2] There is some dispute in the record whether the BOLO was issued for Plaintiff by name (*see* Affidavit of Pinckney B. Montgomery at 2 (Dkt. #67-3, filed Mar. 3, 2008)) or for "a mental patient who had threatened to kill the Emergency Room staff." Affidavit of Ty Cobb at 1 (Dkt. #66-3, filed Mar. 3, 2008). However, Plaintiff put his name down on the sign-in sheet in the emergency room, and Deputy Cobb either knew Plaintiff by sight or believed he matched the description of the individual sought in the BOLO.

[3] Plaintiff has not sued Deputy Cobb.

3

notified the dispatcher that he was chasing Plaintiff, and other officers heard and were aware that Plaintiff was running from Cobb. Plaintiff ran through a business and into a parking lot before Deputy Cobb apprehended Plaintiff by tackling him. When Cobb tackled Plaintiff, Plaintiff landed in a supine position with Deputy Cobb on top of him.

There is no evidence that Cobb either activated the blue light on his vehicle or at any time verbally directed Plaintiff to stop his flight. However, after Cobb apprehended Plaintiff by tackling him, there is no dispute that Cobb commanded Plaintiff, at least once, to get "all the way [on] the ground." Deposition of Austin Dale Yarborough at 57 (Dkt. #66-6 at 10, filed Mar. 3, 2008). However, instead of complying with Cobb's directive, Plaintiff rose to his hands and knees in a prone position.[4]

Officer Pat Boone arrived on the scene and saw Cobb engaged in a scuffle with Plaintiff. Based upon the information contained in the BOLO and what he observed, Boone was "concerned about what the suspect might do if he was able to get away from Deputy Cobb." Aff. of Pat Boone at 2 (Dkt. #66-4, filed Mar. 3, 2008). Boone decided to deploy his Taser gun,[5] and

---

[4] The complaint indicates that when Deputy Boone arrived on the scene, Plaintiff was "under physical restraint [by Cobb] and submissive." Complaint ¶ 8 (Dkt. #1, filed May 1, 2007). However, Plaintiff's deposition testimony reveals that he was not "under physical restraint" and "submissive," but rather was charting his own course despite Deputy Cobb's directions to remain on the ground. *See* Depo. of Austin Dale Yarborough at 56 ("I tried to get back up."), 57 ("And I kept telling him, no, I'm not putting my face in the gravel.").

[5] A Taser gun

is a Conducted Energy Weapon that uses propelled wire to conduct energy to a remote target, thereby controlling and overriding the body's central nervous system. The taser gun fires two probes up to a distance of twenty-one feet from a replaceable cartridge. These probes are connected to the taser gun by high-voltage insulated wire. When the probes make contact with the target, the taser gun transmits electrical pulses along the wires and into the body of the target, through up to two inches of

4

directed Deputy Cobb to release Plaintiff so that he (Cobb) would not be affected by the Taser's electrical impulse. Boone then deployed one burst of his Taser on Plaintiff. As a result of the application of the Taser, Plaintiff was subdued, handcuffed by Deputy Cobb, and arrested. After Deputy Boone deployed the Taser, two City of Camden officers arrived, and Plaintiff's custody was transferred to the City of Camden officers. Plaintiff was taken by Officer Dallas Rabon to the Kershaw County Detention Center where Officer Rabon issued Plaintiff a South Carolina Uniform Traffic Ticket for Resisting an Officer, Ticket Number 86504DG (Dkt. #66-7, filed Mar. 3, 2008). Plaintiff was booked into the Kershaw County Detention Center on this charge. *See* Booking Report, Dkt. # 66-3 at 12 (filed Mar. 3, 2008).

The next day, based upon his review of the incident report and a victim's statement, Detective E.R. Corey of the City of Camden Police Department sought a warrant for Plaintiff's arrest for violation of S.C. Code § 16-3-35, which criminalizes an assault upon emergency medical workers. A Kershaw County Magistrate issued the arrest warrant, which was served upon Plaintiff on that day. This assault charge was eventually *nolle prosequied*; there is no information provided by any party regarding the outcome of the ticket which was issued to Plaintiff (Uniform Traffic Ticket charging Resisting an Officer (Exhibit to Deposition of Austin Dale Yarborough, Dkt. 66-7, filed Mar. 3, 2008)).

**Fourth Amendment – Seizure**

---

clothing.

*Draper v. Reynolds*, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004)

5

A governmental seizure implicating a citizen's Fourth Amendment rights occurs when, viewing the totality of the circumstances of the encounter, a reasonable person would not feel free to leave or otherwise terminate the encounter. *United States v. Sullivan*, 138 F.3d 126, 133 (4th Cir. 1998). Put another way, a seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989). Deputy Cobb's tackle of Plaintiff certainly qualifies as "means intentionally applied."

### Fourth Amendment – Arrest Without Probable Cause

Plaintiff's complaint alleges that Defendants Rabon and Boone violated his rights under the Fourth and Fourteenth Amendments as they arrested him without probable cause. Defendant Boone, although he employed force *during the course of* Plaintiff's seizure, did not arrest Plaintiff. Rabon took custody of Plaintiff at the scene, transported him to the Kershaw County Detention Center, and issued Plaintiff a citation for resisting an officer. Therefore, Rabon is the only one of the two named Defendants (in this cause of action) to whom the allegations apply.

The standard to determine the lawfulness of an arrest is probable cause. *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001). To determine the existence of probable cause, a court "examine[s] the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (citations omitted). "Probable cause exists when the facts and circumstances known to the officer 'would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" *Id.* (citations omitted). *See also Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours

of the offense thought to be committed by that conduct."). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

The facts known to Rabon at the time of the incident were: (1) a BOLO had been issued reporting an incident at the hospital where an individual had allegedly threatened to kill hospital staff; (2) Plaintiff fled from Deputy Cobb and had to be pursued in a foot chase; (3) Boone had deployed his Taser gun by the time Rabon arrived on the scene; and (4) Cobb was on Plaintiff's back "in the process of placing handcuffs on him . . . ." Aff. of Robbie Dallas Rabon ¶ 9 (Dkt. #67-6, filed Mar. 3, 2008). There is no evidence in the record about what Deputies Cobb or Boone told Rabon about Plaintiff's actions.

Plaintiff contends that the officers did not have probable cause to arrest him for his actions at the hospital.[6] However, Plaintiff was initially arrested for, and booked into the

---

[6]Plaintiff repeatedly argues in his responses that it is "elementary text book [sic] law [ ] that an assault is a physical act against a person, and can not just be words." *See*, *e.g.*, Memo in Opp. at 3 (Dkt. # 73, filed Apr. 7, 2008). Plaintiff cites a case from 1912, *State v. Sanders*, 75 S.E. 702 (S.C. 1912) for this proposition. However, "[t]he crime of assault has long been defined as an unlawful attempt or offer to commit a violent injury upon the person of another, coupled with a present ability to complete the attempt or offer by a battery." *Matter of McGee*, 299 S.E.2d 334, 334 (S.C. 1983). South Carolina law defines *battery* as "the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient; an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 754-55 (S.C. Ct. App. 1984).

7

Kershaw County Detention Center for, resisting an officer. Therefore, Plaintiff's actions at the hospital were not the basis of his initial arrest.[7]

Therefore, the court finds that based upon the facts that were known or believed to be known by Rabon at the time he arrived (an alleged serious threat, Plaintiff's flight and the pursuit by Deputy Cobb, and the fact that Boone had deployed his Taser), a reasonable officer would believe that probable cause existed for Plaintiff's arrest for resisting an officer.

Plaintiff has not established a violation of his Fourth Amendment right in this regard. Therefore, Defendant Rabon is entitled to summary judgment on this claim and it is dismissed with prejudice.

**Fourth Amendment – Excessive Force**

"*[A]ll* claims that law enforcement officials have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Conner*, 490 U.S. 386, 395 (1989). *See also Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir.1997) (en banc) (the Fourth Amendment "governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person."). The Fourth Amendment test is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

---

[7]Additionally, an arrest is valid if "based on the facts known to the officer, objective probable cause exist[s] as to *any* crime." *United States v. McNeill*, 484 F.3d 301, 311 (4th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146 (2004)). *See also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [ ] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

motivation." *Graham*, 490 U.S. at 397. The test of reasonableness is "not capable of precise definition or mechanical application." *Id*. at 396. In determining the reasonableness of the use of force, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the importance of the governmental interest alleged to justify the intrusion. *Id.* (citations omitted). Courts have "long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citations omitted). This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders.

The reasonableness inquiry is fact specific. The *Graham* Court set forth several factors to consider, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations omitted). The Supreme Court explained this reasonableness inquiry by noting that there must be an "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* 396-97.

Plaintiff has not sued Deputy Cobb. Rather, Defendant Boone is the only party alleged to have used excessive force during the course of Plaintiff's arrest. Therefore, the court applies the above *Graham* test to Boone's actions in examining Plaintiff's claim of a violation of his Fourth

9

Amendment right to be free from excessive force in the course of a seizure brought about by Boone's firing of the Taser.[8]

Boone arrived on the scene, responding to a BOLO for an individual who had purportedly threatened hospital staff and who may have been mentally unstable. Boone knew that Plaintiff had fled from Deputy Cobb, and Boone encountered Deputy Cobb involved in a fracas with Plaintiff, who was disobeying Cobb's verbal orders by attempting to rise to his feet. According to Boone's testimony, he deployed his Taser because he was concerned about what Plaintiff might do if he escaped from Deputy Cobb.

The first element of the *Graham* test is whether Plaintiff posed an immediate threat to officers or others. Boone believed that Plaintiff had allegedly threatened to kill hospital staff and he believed that "we were dealing with someone who was dangerous and possibly mentally unstable." Aff. of Boone at 1. Boone also knew that Plaintiff had fled from Deputy Cobb, and upon Boone's arrival, appeared to be resisting Deputy Cobb's verbal orders to lie on the ground. On the other hand, this incident occurred in broad daylight, there is absolutely no evidence that anyone believed Plaintiff was armed with any weapon whatsoever, nor is there any evidence that Plaintiff physically assaulted Cobb during the course of the encounter.

---

[8]Plaintiff does not allege that the right asserted relates to the use of the Taser *without warning*. The court notes that there is no evidence of any warning *to Plaintiff* that the taser gun was going to be deployed. Boone did verbally "advise [ ] Deputy Cobb to stop wrestling with the suspect so that I could shoot [Plaintiff] with the Taser," Aff. of Boone at 2, and Plaintiff testified in his deposition that "I heard somebody yell at [Deputy Cobb], get off of him . . . ." Depo. of Austin Dale Yarborough at 58 (Dkt. #66-6 at 11, filed Mar. 3, 2008).

In some circumstances, warnings are required before the use of certain types of force. For example, before the deployment of a police dog, an officer must give a verbal warning, even though a canine is not considered deadly force. There are cases which have found that, based upon the circumstances, a warning is not required before the deployment of a Taser. *See*, *e.g.*, *Draper v. Raynolds*, 369 F.3d 1270 (11th Cir. 2004); *Hinton v. City of Elwood*, 997 F2d. 774 (10th Cir. 1993).

As to whether Plaintiff was actively resisting an officer or evading arrest,[9] Boone knew Plaintiff had fled from Cobb and upon arrival, and he encountered Plaintiff disobeying Cobb's orders. On the other side of the calculus, Plaintiff's testimony, which this court must view favorably, indicates that Plaintiff's resistance to Officer Cobb's actions was merely to avoid having his face shoved into the gravel of the parking lot. However, there is no evidence that Boone was privy to this explanation.

Therefore, in balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the importance of the governmental interest alleged to justify the intrusion, the court finds that Boone's use of the Taser was reasonably proportionate to the situation he encountered. "Although being struck by a taser gun is an unpleasant experience, the amount of force [Boone] used-a single use of the taser gun causing a one-time shocking-was reasonably proportionate to the need for force and did not inflict any serious injury." *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004).[10]

---

[9] Plaintiff did flee when he saw Deputy Cobb. However, there is no testimony that Deputy Cobb directed Plaintiff at any time to stop his flight (Cobb's testimony is merely that he gave chase, and Plaintiff testified that he did not hear any verbal direction to stop), and Plaintiff testified that after he ran through the business, "I put my hands up in the air and I said, look, I'm not running anymore . . . At that time, [Deputy Cobb] lowered his head and shoulders and ran at me and rammed me in the chest and knocked me down into the gravel and got on my back." Depo of Austin Dale Yarborough at 49 (Dkt. #66-6 at 6, filed Mar. 3, 2008). Plaintiff landed on his back, which is evidence that he was facing Deputy Cobb when tackled. *Id*.

[10] Plaintiff avers in his affidavit that Defendant Boone "turned the power to the *taser* off and on several times, and then they handcuffed me." Aff. of Austin Dale Yarborough at 2 (Dkt. # 73-2, filed Apr. 7, 2008). However, Plaintiff made no mention of more than one burst during his deposition. A party may not create a genuine issue of material fact by presenting two conflicting versions of events. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

Even though Plaintiff disputes that he threatened hospital staff, the staff had reported to Officer Montgomery that Plaintiff had threatened them, and law enforcement officers were searching for an individual believed by them to be potentially dangerous and mentally unstable. When he arrived, Boone found this individual struggling with Deputy Cobb. As the Supreme Court has instructed, the court must give "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Therefore, the court finds that Plaintiff has not established that Boone violated his Fourth Amendment right to be free of seizure by excessive force.

**Qualified Immunity**

Even if this court were to find excessive force, Boone would still be entitled to qualified immunity.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Id*. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*. If the

facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id.* In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id.* "If the right was not clearly established in the 'specific context of the case'–that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'–then the law affords immunity from suit." *Id.* (quoting *Saucier*, *supra*, 533 U.S. at 201). "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.1998) (en banc)) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . .'").

There is no case law in the Fourth Circuit or the Supreme Court which would establish that under facts similar to those of this case, an individual has a right to be free from seizure by an officer's deployment of a Taser. Therefore, Defendant Boone is entitled to qualified immunity.

**False Arrest**

To prevail on a state law cause of action for false arrest, Plaintiff must establish: "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 651 (S.C. 2006).

Plaintiff cannot meet the third element, as Plaintiff was arrested based on probable cause. Therefore, Plaintiff's cause of action for false arrest is dismissed with prejudice.

**Battery**

Plaintiff's Third and Fourth Causes of Action allege that Defendant Rabon did batter him. However, Plaintiff incorrectly named Rabon as the individual who tackled him, and has never moved to cure this deficiency. Therefore, Rabon is entitled to summary judgment on this claim. Plaintiff also has produced no evidence that Rabon struck him in an manner. Therefore, Rabon is entitled to summary judgment on this cause of action as well.

Plaintiff's Fifth Cause of Action alleges that Boone did batter him based upon Boone's deployment of the Taser. However, as this court has determined that Boone's use of the Taser was reasonable, no claim for battery can lie. *Roberts v. City of Forest Acres*, 902 F.Supp. 662, 671-72 (D.S.C. 1995).

**Malicious Prosecution**

Under South Carolina law, "to maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. . . . An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause." *Law*, *supra*, 629 S.E.2d at 648 (internal quotations and citations omitted).

The court having found that probable cause existed for his initial arrest, Plaintiff cannot satisfy all of the above-listed elements. Therefore, Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution is granted and it is dismissed with prejudice.

**Other Federal Rights**

Plaintiff claims in his Seventh and Eighth Causes of Action that Defendants violated his Fifth and First Amendment rights, respectively. These causes of action are utterly without merit and warrant no further discussion.

**Conclusion**

For the reasons discussed above, all Defendants are entitled to summary judgment and this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

                                            s/ Cameron McGowan Currie
                                            CAMERON MCGOWAN CURRIE
                                            UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 17, 2008

C:\Documents and Settings\Glp59\Local Settings\Temp\notesE1EF34\07-1257 Yarborough v. Montgomery e.wpd